No. 23-5198

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

YANPING CHEN,
*Plaintiff-Appellee,*

*v.*

FEDERAL BUREAU OF INVESTIGATION, et al.,
*Defendants-Appellees,*

CATHERINE HERRIDGE,
*Appellant.*

On Appeal from the United States District Court for the District of Columbia,
No. 1:18-cv-03074-CRC

## PLAINTIFF-APPELLEE YANPING CHEN'S OPPOSITION TO NON-PARTY-APPELLANT CATHERINE HERRIDGE'S EMERGENCY MOTION FOR STAY PENDING APPEAL AND MOTION TO DISMISS HERRIDGE'S APPEAL FOR LACK OF APPELLATE JURISDTION

Andrew C. Phillips (Bar No. 64792)
MEIER WATKINS PHILLIPS PUSCH LLP
1629 K. Street NW, Suite 300
Washington, DC 20006
Email: andy.phillips@mwpp.com

*Counsel for Plaintiff-Appellee Yanping Chen*

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Plaintiff-Appellee certifies as follows:

**A. Parties, Intervenors, and Amici Curiae**

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Emergency Motion for Stay filed by the Appellant.

**B. Rulings Under Review**

The ruling under review is the August 1, 2023 order of the District Court for the District of Columbia (J. Cooper) in Civil Action No. 1:18-cv-03074-CRC denying in part Appellant's motion to quash. [Dkt. No. 140].

**C. Related Cases**

Undersigned counsel is not aware of any related cases pending in this Court or any other Court.

_/s/ Andrew C. Phillips_
Andrew C. Phillips (Bar No. 64792)

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES.........i

TABLE OF AUTHORITIES.................................................................... iii

INTRODUCTION ...................................................................................1

BACKGROUND.....................................................................................5

ARGUMENT ........................................................................................10

I.    This Court Lacks Jurisdiction Over Herridge's Appeal Because the District Court's Order is Not a Final Order or Appealable Under the Collateral Order Doctrine. ...........................................................10

II.   A Stay Is Not Warranted Here. ...................................................18

      A.    The Instant Appeal Cannot Succeed on the Merits........................19

      B.    Herridge Will Suffer No Irreparable Harm from Denial of a Stay, Whereas Chen has been Harmed and Will Suffer Further Prejudice from Unnecessary and Pointless Delay.........................25

      C.    No Public Interest is Served by Continuing to Shield a Government Official Who Violated the Rights of an American Citizen. .....................................................................................27

III.   Herridge's Appeal Should be Dismissed....................................29

CONCLUSION.....................................................................................29

CERTIFICATE OF COMPLIANCE ...................................................30

CERTIFICATE OF SERVICE.............................................................31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. United States*,
    201 U.S. 117 (1906) .................................................................................13

*Cuomo v. U.S. Nuclear Regulatory Comm'n*,
    772 F.2d 972 (D.C. Cir. 1985) ..............................................................19

*Food Lion, Inc. v. United Food & Com. Workers
Int'l Union, AFL-CIO-CLC*,
    103 F.3d 1007 (D.C. Cir. 1997) ............................................................11

*Hatfill v. Mukasey*,
    No. 08-5049 (D.C. Cir. Nov. 17, 2008) ...........................................12, 24, 27

*In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*,
    490 F.3d 99 (2d Cir. 2007) ....................................................................14

*In re Flat Glass Antitrust Litig.*,
    288 F.3d 83 (3d Cir. 2002) ...........................................................14, 17, 26

*In re Motor Fuel Temperature Sales Practice Litig.*,
    641 F.3d 470 (10th Cir. 2011) ...............................................................14

*In re Ryan*,
    538 F.2d 435 (D.C. Cir. 1976) ..........................................................11, 26

*In re Subpoenas Served on Am. Acad. of Pediatrics*,
    No. 23-7025, 2023 WL 2442223 (D.C. Cir. Mar. 8, 2023) .........................15

*Kemp v. Gay*,
    947 F.2d 1493 (D.C. Cir. 1991) .......................................................9, 11, 26

*Lakes Pilots Ass'n, Inc. v. U.S. Coast Guard*,
    359 F.3d 624 (D.C. Cir. 2004) ..............................................................11

*Lee v. Dep't of Justice*,
    401 F. Supp. 2d 123 (D.D.C. 2005) ........................................................24

*Lee v. Dep't of Justice*,
    413 F.3d 53 (D.C. Cir. 2005) ...........................................7, 12, 20, 23, 24, 28

*Leonard v. Martin*,
    38 F.4th 481 (5th Cir. 2022) ..........................................................................17

*Luckey v. Miller*,
    929 F.2d 618 (11th Cir. 1991)........................................................................23

*Ohio A. Philip Randolph Institute v. Larose*,
    761 F. App'x 506, 511 (6th Cir. 2019) .........................................................14

*Stringfellow v. Concerned Neighbors in Action*,
    480 U.S. 370 (1987 ........................................................................................11

*United States v. Anderson*,
    464 F.2d 1390 (D.C. Cir. 1972) .........................................................13, 18, 26

*United States v. Ryan*,
    402 U.S. 530 (1971).......................................................................................13

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018)...................................................................16, 17

*Zerilli v. Smith*,
    656 F.2d 705 (D.C. Cir. 1981) ................................................7, 20, 21, 23, 24

**Statutes**

28 U.S.C. § 1291 ...................................................................................................29

28 U.S.C. § 1292 ....................................................................................3, 5, 8, 9, 13

The Privacy Act of 1974, Pub. L. No. 93-579, §2(A) .............................................28

**Other Authorities**

Wright & Miller, 15B Fed. Prac. & Proc. Juris. § 3914.23 (2d ed. 2023) ..............12

## **INTRODUCTION**

Non-Party Catherine Herridge's September 11, 2023 Opposed Emergency Motion for Stay Pending Appeal and for Administrative Stay Pending Disposition of the Stay Motion ("Mot.") largely ignores, and indeed attempts to obscure, a crucial and threshold question: Does this Court have jurisdiction over Herridge's interlocutory appeal of the District Court's non-final discovery order?  Under well-established Circuit precedent, the answer is clearly "no," and thus not only should Herridge's request for a stay be denied, but her pending appeal should be dismissed for lack of jurisdiction.

Circuit precedent holds that if Herridge disagrees with and wants to appeal the merits of the District Court's order compelling her to sit for a deposition and identify the government official that unlawfully leaked Privacy Act-protected records to her, Herridge is required to defy the District Court's order, be held in contempt, and then—and only then—will she have an appealable final order that will allow her to appeal the District Court's denial of her motion to quash her deposition subpoena.  This threshold jurisdictional issue dooms not only the instant Motion, but Herridge's appeal as well.  Herridge's Motion should be denied, and her appeal should be summarily dismissed, so that the underlying case can proceed and Herridge can, if she wishes, present the merits of the underlying discovery dispute to this Court when the dispute is actually ripe for this Court's review.

1

Plaintiff-Appellee Dr. Yanping Chen, a highly accomplished scientist, university founder, and American citizen, saw her world upended when, in 2017, an unknown government official unlawfully leaked Privacy Act-protected records concerning Chen to Herridge, which then formed the basis for a series Herridge produced for Fox News implying that Chen was a covert Chinese spy. While the leaker's intentions can only be speculated about given that their identity remains hidden by Herridge, circumstantial evidence adduced in discovery suggests that an agent with one of the Defendant government agencies, upset by the government's decision not to charge Chen with any crime, decided to leak protected records—including personal photographs, immigration records, and FBI interview memoranda—to Herridge and Fox News in order to present a one-sided story and summarily convict Chen in the court of public opinion. This was a blatant violation of Chen's rights protected by the Privacy Act, and thus Chen instituted this suit to identify the wrongdoer and vindicate her rights.

Unfortunately, despite years of incredibly expensive and exhaustive discovery, Chen has, to date, been unable to identify the government official who unlawfully leaked her protected records to Herridge. In keeping with established Circuit precedent, after exhausting alternative means to obtain that information, which is indisputably central to her Privacy Act claim, Chen sought to discover the identity of the leaker from Herridge, the only non-party that can surely provide that

information.  After serving a deposition subpoena and completing exhaustive briefing before the District Court on Herridge's motion to quash it, Judge Cooper held that Chen had satisfied her obligations under this Court's precedent to show that Herridge's qualified First Amendment privilege claim was overcome because Chen demonstrated that the identity of the leaker was central to her Privacy Act claim, and Chen exhausted all reasonable efforts to obtain the identity of that leaker before seeking it from Herridge.  Following the District Court's denial of her motion to quash, Herridge—tacitly recognizing that the District Court's discovery order was not an appealable final order—asked the District Court to certify its order for appeal pursuant to 28 U.S.C. § 1292(b), and to stay her need to sit for a deposition pending this appeal.  The District Court denied both requests, holding that certification and a stay would be pointless because this Court lacks jurisdiction to adjudicate the merits of the denial of Herridge's motion to quash unless and until Herridge refuses to comply with that order and is held in contempt for doing so.

The District Court's conclusion on that score was entirely correct, and it inexorably leads to the proper resolution of not only the instant Motion, but Herridge's appeal writ large.

*First*, the Motion must be denied, and Herridge's appeal dismissed, because the District Court's order denying Herridge's motion to quash her deposition subpoena is not a "final," appealable order, nor does it fall within the narrow

exception of the collateral order doctrine. This Circuit's precedent is clear that if Herridge wishes to appeal the merits of that order, she is required to sit for a deposition, refuse to comply with the order, be held in contempt, and then appeal the merits of the District Court's order in the context of appealing a contempt citation. While Herridge might find this process inconvenient or burdensome, this Court has held that it is mandated by Supreme Court precedent. Thus, the instant appeal is deficient for lack of jurisdiction. Entry of a stay would only waste substantial time, resources, and the progress of the underlying case before this Court inevitably concludes, as it must, that is has no jurisdiction over Herridge's current appeal.

*Second,* turning to the factors relevant to the granting of a stay pending appeal—which this Court cannot and should not reach given the clear jurisdictional defect—the stay request should be denied. Most importantly, Herridge cannot demonstrate that she is likely to succeed on the merits of her appeal, not only in light of the threshold jurisdictional issue, but also the fact that the District Court's decision on Herridge's motion to quash was entirely in line with established Circuit guidance on adjudicating a reporter's qualified First Amendment privilege claim in the context of a Privacy Act suit. Moreover, because she retains the ability to refuse to disclose her source, suffer contempt, and then appeal the merits of the underlying discovery order, Herridge cannot possibly demonstrate any present irreparable harm, whereas Chen has been and continues to be harmed by the inability to seek redress for the

blatant violation of her rights protected by the Privacy Act. Finally, little public interest is served by allowing Herridge to continue to shield and protect the identity of the government official who illegally and wrongfully leaked Chen's protected records to Herridge in order to cause Chen harm.

At bottom, this current appeal is a waste of time and resources—Chen's, this Court's, and Herridge's. This Court does not have jurisdiction over this appeal, and Herridge's decision to press on despite the District Court's denial of § 1292(b) certification and a stay smacks of gamesmanship and an effort by Herridge—backed by the war chest of Fox News—to simply out-resource Chen in the hopes that she will lose the will to continue efforts to vindicate her rights and identify the government official who unlawfully leaked her protected information to smear her. Under well-established precedent, Herridge's Motion should be denied, and her appeal dismissed for lack of jurisdiction.

## **BACKGROUND**

This Privacy Act suit involves the suspected leak, by a government official, of legally protected information concerning Plaintiff Yanping Chen to Catherine Herridge, who was at the time a reporter for Fox News. (Mem. Opinion & Order at 2 (Aug. 1, 2023) [Dkt. 140] ("Order Denying the Motion to Quash" or "MTQ Order") (attached as Ex. 1 to Herridge's Mot.).) After defeating Defendants' motion to dismiss, Chen engaged in extensive discovery—including serving scores

of document requests, interrogatories, and requests for admission, issuing over a dozen third-party subpoenas, taking eighteen depositions, and obtaining 22 declarations—aimed at uncovering the identity of the suspected government official that leaked her Privacy Act-protected records to Herridge. (*Id.* at 3.) When those efforts failed to definitively identify the leaker(s), Chen served Fox and Herridge with document and deposition subpoenas in May and June of 2022. (*Id.*)

Both Herridge and Fox then moved to quash. (Mem. in Support of Non-Party Catherine V. Herridge's Mot. to Quash (Aug. 8, 2022) [Dkt. 96-1]; Mem. in Support of Non-Party Fox News Corp.'s Mot. to Quash (Aug. 8, 2022) [Dkt. 97-1].) Both argued that Chen had not overcome the journalists' qualified First Amendment privilege to withhold the identity of the leaker because (1) the subpoenas were overbroad and sought information not central to Chen's Privacy Act claims; (2) Chen had not sufficiently exhausted reasonable alternative means to discover the identity of the leaker; (3) the Court should engage in a wide-ranging balancing of Herridge's First Amendment interest in maintaining her source(s)' confidentiality against Chen's personal interest in prosecuting her Privacy Act claims; and (4) alternatively, that the Court should find a federal common law reporter's privilege that allowed it to engage in the same expansive balancing. (MTQ Order at 4 [Dkt. 140].) In response, Chen argued that (1) the First Amendment privilege is overcome because she sought only information central to her claims and had exhausted reasonable

alternative means to identify the leaker; (2) that under binding D.C. Circuit precedent, the Court's analysis must focus on the issues of centrality and exhaustion, and not an amorphous, subjective balancing of the litigants' interests; and (3) that there is no federal common law reporter's privilege that would allow an end-run around established precedent regarding the proper scope of the qualified privilege. (*See generally* Pl.'s Mem. in Opp'n to Non-Party Catherine V. Herridge's Mot. to Quash (Sept. 6, 2022) [Dkt. 123].)

On August 8, 2023, the Court issued its Order granting in part and denying in part Herridge's motion to quash and granting Fox's motion to quash. After careful review, the Court held that binding Circuit precedent addressing this precise issue in the Privacy Act context—including *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981), and *Lee v. Dep't of Justice*, 413 F.3d 53 (D.C. Cir. 2005)—instructed district courts to focus their analysis on whether the information sought from the reporter is central to the plaintiff's claims, whether plaintiff has exhausted reasonable alternative avenues of discovery, and whether the journalist is a party to the underlying litigation. (MTQ Order at 5-14 [Dkt. 140].) The Court rejected Herridge and Fox's arguments that the Court should engage in a "free-form balancing of interests" as inconsistent with D.C. Circuit precedent. (*Id*. at 10-11.) Reviewing the discovery record against Fox and Herridge's arguments, the Court then concluded that, with respect to the deposition subpoena to Herridge, Chen had demonstrated that the

identity of the leaker was central to her claims, and that Chen had exhausted reasonable alternative efforts to identify the leaker.  (*Id*. at 14-21.)  Ultimately, the Court determined that Chen was entitled to depose Herridge about the identity of her confidential source(s) for any Privacy Act-protected information, as well as any non-privileged matters relevant to Chen's claim.  (*Id*. at 28.)  The Court also granted Fox's motion to quash, without prejudice to Chen renewing her subpoenas to Fox if she does not obtain the information she seeks from Herridge.  (*Id*.)

On August 11, 2023, Herridge filed a motion asking the District Court to certify its Order Denying the Motion to Quash for appeal pursuant to 28 U.S.C. § 1292(b), as well as a motion asking the District Court to stay her need to sit for a deposition pending appeal.  (Non-Party Catherine Herridge's Mot. to Amend Order to Include Certification for Interlocutory Appeal Under 28 U.S.C. § 1292(b) ("Mot. for Certification") (Aug. 11, 2023) [Dkt. 144]; Non-Party Catherine Herridge's Mot. for a Stay Pending Appeal (Aug. 11, 2023) [Dkt. 145].)  On August 31, 2023, she filed a notice of appeal of the Order Den. the Mot. to Quash.  (Notice of Appeal to the U.S. Court of Appeals for the D.C. Cir. (Aug. 31, 2023) [Dkt. 150].)  On September 6, 2023, the District Court entered an Opinion and Order denying Herridge's request for certification and for a stay, based on the "well-established" rule in this Circuit that "a district court's ruling on a subpoena's validity is not enforceable unless and until the subpoenaed party defies an enforcement order and

is cited for contempt," because "it is only after entry of contempt that the underlying discovery dispute becomes ripe for appellate review."  (Opinion & Order at 4 (Sept. 6, 2023) [Dkt. 152] ("Order Den. Certification & Stay") (quoting *Kemp v. Gay*, 947 F.2d 1493, 1495 (D.C. Cir. 1991).)  Noting that this rule is "routinely" applied in this "precise context" of a nonparty challenging a denial of a motion to quash on First Amendment grounds, the District Court concluded that "there is little reason to believe the Circuit will deviate from this regular order and exercise appellate jurisdiction over an appeal under 28 U.S.C. § 1291…." (*Id*. at 4-5.)  Thus, in light of the clear "jurisdictional defects" in Herridge's appeal, the Court concluded her appeal had "scant prospect of success," and thus she could not show a likelihood of success on the merits warranting a stay.  (*Id*. at 5.)

After the District Court declined to certify its Order Denying the Motion to Quash for appeal pursuant to § 1292(b) and denied Herridge's motion to stay her pending deposition on the grounds that this Court has no jurisdiction over her present appeal, Herridge nonetheless elected to press the appeal, and now asks this Court to mandate the stay that the District Court declined to enter.

## ARGUMENT

**I.    This Court Lacks Jurisdiction Over Herridge's Appeal Because the District Court's Order is Not a Final Order or Appealable Under the Collateral Order Doctrine.**

While Herridge's Motion focuses on the elements that this Court applies in determining whether to grant an emergency stay pending appeal, she gives short shrift to a threshold, dispositive question; namely, does this Court even have jurisdiction over her appeal in the first place? The answer is plainly "no," because, as the District Court held in denying Herridge's request for a stay, established Circuit precedent dictates that before Herridge can appeal the merits of the denial of her motion to quash the deposition subpoena, she must appear for the deposition, refuse to comply with the District Court's order requiring her to reveal her source, be held in contempt, and then appeal from the order holding her in contempt. Only if all of those eventualities come to pass is there an appealable, final order. Nor is the Order Denying the Motion to Quash appealable pursuant to the collateral order doctrine. Accordingly, this Court lacks jurisdiction over the present appeal, Herridge's Motion should be denied, and her appeal should be dismissed.

To qualify under the collateral order doctrine, "the order being appealed must: '(i) conclusively determine the disputed question; (ii) resolve an important issue completely separate from the merits of the action; and (iii) be effectively unreviewable on appeal from a final judgment.'" *Lakes Pilots Ass'n, Inc. v. U.S.*

*Coast Guard*, 359 F.3d 624, 625 (D.C. Cir. 2004) (quoting *Stringfellow v.*
*Concerned Neighbors in Action*, 480 U.S. 370, 375 (1987)). Here, Herridge cannot
demonstrate that the Order is final and effectively unreviewable because, as she
acknowledged in briefing to the District Court, "Circuit precedent is clear that
subpoena recipients may appeal and challenge the enforceability of a subpoena after
refusing to comply and being held in contempt." (Mot. for Certification at 14 [Dkt.
144] (citing *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-*
*CLC*, 103 F.3d 1007, 1011 (D.C. Cir. 1997).) It is precisely because this additional
avenue of appeal remains open to non-parties that this Court has long held that
interlocutory appeal of a denial of a motion to quash a discovery order is not
available. *See, e.g.*, *In re Ryan*, 538 F.2d 435, 437 (D.C. Cir. 1976) (citations
omitted) (holding that where an order "is essentially one compelling testimony and
the production of documents," the Supreme Court "has consistently held that such
orders are not final and hence are not appealable," because the nonparty "is entitled
to refuse to comply and in the event contempt proceedings are brought against [the
nonparty] they may then litigate the validity of the [] order"); *Kemp*, 947 F.2d at
1495 (citations and quotations omitted) (holding that "a district court's ruling on a
subpoena's validity is not enforceable unless and until the subpoenaed party defies
an enforcement order and is cited for contempt. Under this general rule, it is only
after entry of contempt that the underlying discovery dispute becomes ripe for

11

appellate review"); *see also* Wright & Miller, 15B Fed. Prac. & Proc. Juris. § 3914.23 (2d ed. 2023) ("[T]he rule remains settled that most discovery rulings are not final. The basic means of securing review is disobedience to an order compelling discovery, followed by an adjudication of contempt and appeal from the contempt order…. A nonparty can appeal an order of either civil or criminal contempt."). Indeed, recent analogous cases in this Circuit—involving a reporter's claim of First Amendment privilege in a Privacy Act case—reached this Court not via appeal of the discovery order itself, but via appeal of a contempt citation after the nonparty reporter refused to comply with an order to divulge his sources. *See Lee v. Dep't of Justice*, 413 F.3d at 55 ("Five journalists appeal a District Court order holding them in contempt of court for refusing to answer questions regarding confidential sources in a non-party deposition in a civil case."); Order, *Hatfill v. Mukasey*, No. 08-5049 (D.C. Cir. Nov. 17, 2008) (noting that the appeal arose from the district court's contempt order).

Herridge relegates her acknowledgement of this Circuit's established precedent to only a footnote, (Mot. at 12 n.4), and her efforts to distinguish her present circumstances are entirely unavailing. First, Herridge argues that this Court has not expressly applied the rule in the context of a "***First Amendment*** challenge to a third party discovery order." (*Id.*)[1] But in fact this Court has applied the rule

---

[1] Emphasis added unless otherwise noted.

against interlocutory appeal of a non-final discovery order prior to a contempt finding in the precise context of a non-party asserting that enforcement of a subpoena will impact a claimed constitutional right. *United States v. Anderson*, 464 F.2d 1390, 1391-92 (D.C. Cir. 1972) (holding that a nonparty witness who claimed a district court order compelling his testimony would result in violation of his Fifth Amendment rights could not appeal the order because "[a]ppellate review of the decision is available only by an appeal from a subsequent order of the district court adjudging the recalcitrant witness in contempt"). Indeed, this Court in *Anderson* held that result was ***required*** by Supreme Court precedent, even when the nonparty claimed that the discovery order would impact "a fundamental constitutional liberty enshrined in the Bill of Rights." *Id.* at 1392, n.4 (citing *United States v. Ryan*, 402 U.S. 530, 532 (1971) and *Alexander v. United States*, 201 U.S. 117, 121-22 (1906)).

Moreover, as the District Court noted in refusing to certify its denial of Herridge's motion to quash for appeal pursuant to 28 U.S.C. § 1292(b), "courts routinely have applied this rule in this precise context: where a non-party in a civil case seeks to challenge the denial of a motion to quash a subpoena on First Amendment grounds."[2] (Order Den. Certification & Stay at 4 [Dkt. 152]); *see also*

---

[2] The fact that Herridge sought (and failed to obtain) 28 U.S.C. § 1292(b) certification from the District Court is itself a tacit acknowledgment that the Order Denying the Motion to Quash is not appealable pursuant to the collateral order doctrine and could only be appealed if the District Court agreed to certify it.

*Ohio A. Philip Randolph Institute v. Larose*, 761 F. App'x 506, 511 (6th Cir. 2019) (quoting *In re Motor Fuel Temperature Sales Practice Litig.*, 641 F.3d 470, 484 (10th Cir. 2011) (holding that a nonparty's "'long-recognized option' to defy the disclosure orders and incur appealable contempt citations" counseled "'strongly against permitting immediate collateral order review of all discovery orders adverse to a claimed First Amendment privilege'"); *In re Motor Fuel Temperature Sales Practice Litig.*, 641 F.3d at 483-484 (noting "there are several additional alternatives to collateral order review of a discovery order that may adequately remedy alleged violations of a First Amendment privilege," including that "parties claiming a privilege may defy the discovery order, incur court-imposed sanctions, and appeal from the sanctions," and that "[t]he availability of these alternatives counsels strongly against permitting immediate collateral order review of all discovery orders adverse to a claimed First Amendment privilege"). The rule has similarly been applied when a non-party claims that enforcement of a subpoena via a denial of a motion to quash would impact other privileges against discovery. *See, e.g.*, *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, 490 F.3d 99, 107-108 (2d Cir. 2007) (order directing attorney to disclose materials claimed to be work product not appealable as collateral order because attorney could refuse, be held in contempt, and appeal that order); *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 90 (3d Cir. 2002) (denying nonparty's appeal of a discovery order prior to a contempt finding

14

and holding that "[n]onparties challenging discovery orders requiring the production of documents allegedly protected by the attorney-work product doctrine must stand in contempt" or there is "no jurisdiction to consider their appeals"). Herridge cites to no case where this Court held that this general rule does not apply in the context of a First Amendment challenge to a discovery order.[3]

Next, Herridge effectively argues that this Court should ignore its prior precedent and hold that the Order Denying the Motion to Quash the deposition subpoena is appealable within the meaning of the collateral order doctrine because "forced disclosure of Ms. Herridge's sources would be effectively unreviewable on appeal from a final judgment in the case because once the sources are disclosed there can be no effective remedy." (Mot. at 13.) But again, this argument ignores that Herridge retains the ability to refuse to disclose her sources at her deposition, and to appeal the merits of her motion to quash in the event that the District Court ultimately holds her in contempt for doing so. In fact, Herridge represented to the District Court, repeatedly and in no uncertain terms, that she "does not intend to reveal any confidential source(s) if her deposition is scheduled and would refuse to answer

---

[3] Herridge points only to a recent two-sentence, *per curiam* order in which this Court granted an emergency stay. (Mot. at 4 (citing *In re Subpoenas Served on Am. Acad. of Pediatrics*, No. 23-7025, 2023 WL 2442223, at *1 (D.C. Cir. Mar. 8, 2023).) But that opinion says nothing about the grounds on which the Court based the stay, and Herridge acknowledges that the appellant there presented additional bases for jurisdiction other than the flawed one upon which Herridge relies here.

questions about her source(s) if that becomes necessary to seek an immediate appeal." (Mot. for Certification at 5 [Dkt. 144].)  Thus, there is no dispute that if she refuses to reveal her source, as she has said she will, Herridge will have the opportunity to obtain meaningful appellate review of the District Court's order denying her motion to quash. (*Id.* at 14 (acknowledging that "Circuit precedent is clear that subpoena recipients may appeal and challenge the enforceability of a subpoena after refusing to comply and being held in contempt").)

Because she cannot dispute that a means to appeal the merits of the denial of her motion to quash remains available to her before she would actually have to disclose any source and lose the benefit of her claimed First Amendment privilege, Herridge then pivots to asserting that the mere potential of a contempt sanction is sufficient to render the order denying her motion to quash immediately appealable. (Mot. at 14-15.)  Herridge's argument relies on a recent case from the Fifth Circuit in which that court permitted an interlocutory appeal of a discovery order that a non-party claimed would violate its First Amendment religious rights.  (Mot. at 12-14 (citing *Whole Woman's Health v. Smith*, 896 F.3d 362, 367-68 (5th Cir. 2018).)  But *Whole Woman's Health* is unpersuasive due to both its posture and its reasoning. The case involved an aggressive district court repeatedly imposing unreasonable deadlines on the third party despite its voluntary cooperation with discovery and claims of religious privilege over the relatively small number of documents it

16

withheld.  *See Whole Woman's Health*, 896 F.3d at 366-369.  And, as the District Court noted in declining to certify Herridge's appeal, "the Fifth Circuit failed to acknowledge that a subpoenaed party can vindicate its First Amendment rights by challenging an ensuing contempt citation and attempted to distinguish contradictory out-of-circuit precedents on the ground that these cases did not involve discovery against a third party, even though that was the case [in the authorities the court attempted to distinguish]."  (Order Den. Certification & Stay at 4 n.1 [Dkt. 152].)[4] Moreover, while Herridge portrays the requirement of a contempt finding before an appeal is jurisdictionally proper as having no "countervailing advantage in the orderly administration of cases," the rule is in fact designed to ensure that the nonparty has a sufficient stake in the issue before burdening the courts with an appeal, and to give both the nonparty and the litigant an opportunity for a second look, as it remains possible the nonparty will ultimately elect to comply or that the litigant may elect not to seek a contempt citation.  *See In re Flat Glass Litig*., 288 F.3d at 89.

At bottom, this Court has already held that Supreme Court precedent dictates

---

[4] The Fifth Circuit has since reiterated the general rule that, except in situations where a high-order value or substantial public interest would be "imperiled or destroyed if review were delayed," "this court and every other circuit court hold that the collateral order doctrine does not provide jurisdiction over a nonparty's appeal from a discovery order because nonparties have alternative avenues for appellate review."  *Leonard v. Martin*, 38 F.4th 481, 487 (5th Cir. 2022).

that even in a case where, as here, a nonparty asserts that compliance with a discovery order will potentially impact "a constitutional liberty enshrined in the Bill of Rights," the nonparty "may not attack the discovery order except by appeal from a judgment of contempt." *Anderson*, 464 F.2d at 1392 & n.4.  Regardless of Herridge's claims that following this required procedure is inconvenient or burdensome, "Section 1291 [] is a jurisdictional statute and a defect in jurisdiction cannot be ignored." *Id*. at 1392.  That is precisely why the District Court already declined to enter a stay of its Order Denying the Motion to Quash—because "[t]here is scant prospect of success in Herridge's appeal given that the Circuit will likely not reach the merits due to the jurisdictional defects." (Order Den. Certification & Stay at 5 [Dkt. 152].)  The District Court's holding was correct and in accord with this Circuit's clear precedent.  Accordingly, this Court lacks jurisdiction over this appeal, Herridge's request for an emergency stay should be denied, and the appeal should be dismissed.  Should Herridge ultimately choose not to comply with the District Court's discovery order and be held in contempt, she will have every opportunity to appeal the merits of the District Court's order denying her motion to quash, as well as the appropriateness of any contempt sanction imposed by the District Court.

## II.    A Stay Is Not Warranted Here.

For the reasons above, Herridge's appeal must fail for lack of jurisdiction.  But even if this Court were to consider the merits of Herridge's stay request—it should

not, given the clear jurisdictional defect—Herridge's request should be denied because it does not satisfy any of the factors relevant to determining whether a stay is warranted: (1) Herridge is unlikely to prevail on the merits; (2) Herridge will not be irreparably harmed absent a stay, while Chen will be harmed by the further delay; and (3) there is little public interest in allowing Herridge to continue to protect a government official who abused their access to Chen's sensitive personal information in order to violate her rights as a United States citizen. *See Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam) (listing the above factors as those considered by the Court in evaluating a request for a stay).

## A.     The Instant Appeal Cannot Succeed on the Merits.

Herridge has failed to demonstrate a likelihood of success on the merits sufficient to justify a stay.  As set forth above, the District Court declined to stay Herridge's deposition specifically because the "jurisdictional defects" in her appeal left her with a "scant prospect of success."  (Order Den. Certification & Stay at 5 [Dkt. 152].)  But even putting aside that clear jurisdictional defect, Herridge is unlikely to succeed as far as the merits of the Order Denying the Motion to Quash because the District Court's well-reasoned order was firmly grounded in, and in accord with, this Circuit's established precedent.  Herridge argues that the District Court: (1) misapplied the analysis of the First Amendment's reporter's privilege set

forth in *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981) by only weighing the two factors of centrality and exhaustion rather than applying a broad balancing analysis that also weighs considerations such as the importance of journalism in the national security context, the plaintiff's personal interest in damages, the merits of plaintiff's case, and the egregiousness of the government's alleged misconduct; and (2) failed to recognize and apply a federal common law reporter's privilege that calls for a similarly broad balancing of interests. (Mot. at 16-17.) Both fall flat. The District Court's Order makes it abundantly clear that Herridge's arguments on appeal are inconsistent with Circuit precedent.

In denying Herridge's motion to quash Chen's deposition subpoena, the District Court found that the controlling cases in this Circuit, *Zerilli*, 656 F.2d at 705, and *Lee v. Dep't of Justice*, 413 F.3d 53 (D.C. Cir. 2005), instruct district courts to focus their analysis of whether a qualified reporter's privilege applies on whether the information sought is central to the plaintiff's claims, whether the plaintiff exhausted reasonable alternative avenues of discovery, and whether the journalist is a party to the underlying action. (MTQ Order at 5-14 [Dkt. 140].) The court carefully considered and rejected Herridge's argument that *Zerilli* requires district courts to engage in some sort of "free-form, anything goes analysis" as inconsistent with this Circuit's precedent, reasoning that while *Zerilli* called for a balancing test that, when properly applied, should result in the privilege "prevail[ing] in all but the

most exceptional cases," *Zerilli* "also channeled the district courts' discretion by identifying the specific factors to weigh in that balance": centrality, exhaustion, and whether the reporter was a party to the underlying litigation. (*Id*. at 6, 10-11 (quoting *Zerilli*, 656 F.2d at 712-14).) The District Court then noted, "[t]hat courts must tailor the balancing test to those central factors identified in Zerilli is confirmed by the D.C. Circuit's subsequent application of the analysis in Lee v. Department of Justice, 413 F.3d 53 (D.C. Cir. 2005)," and further reasoned that, "[l]ike Zerilli, then, Lee did not apply a free-form balancing of interests but rather struck the balance between private and public interests by reference to the specific factors identified in Zerilli— the centrality of the requested discovery and the exhaustion of reasonable alternatives." (*Id*. at 9-10.)

Analyzing those two central factors in the context of this case, the District Court then readily concluded that, as Herridge acknowledged, if the deposition subpoena was limited to focus on the identity of the source or sources who provided Herridge with Chen's Privacy Act protected information, the centrality factor was easily satisfied. (*Id*. at 15.) The District Court then carefully evaluated the application of the exhaustion factor in *Zerilli*, *Lee*, and other district court Privacy Act cases, and considered Herridge's various "speculative" arguments about additional discovery that Herridge contended Chen should have conducted before seeking the identity of the leaker(s) from Herridge. (*Id*. at 16-21.) The District Court

held that Herridge's arguments would "read the word 'reasonable' out of <u>Zerilli</u>'s exhaustion requirement," and concluded that this factor too "tilts sharply in Chen's favor."  (*Id*. at 21.)

Additionally, although it rejected Herridge's arguments for a free-form balancing of Chen's interests versus Herridge's, "for the sake of completeness," the District Court took its analysis a step further, finding that although Circuit precedent did not require "either a full-bore analysis of Chen's likelihood of success on the merits … or an assessment of the public and private interests at play," the District Court would nevertheless address Herridge's arguments that her First Amendment interests outweighed Chen's interest in pursuing redress for violation of her rights.  (*Id*. at 22.)  The District Court then concluded that Herridge's arguments regarding supposed flaws in Chen's claims or recoverable damages were both misguided or premature, and further "reject[ed] the assertion that Chen's Privacy Act claim implicates only her own personal interests," noting that "Congress has recognized the weightiness of such willful disclosures by creating a private right of action to deter them."  (*Id*. at 24.)  Thus, the Court found that even if it were required to engage in some broader analysis of Herridge's interests versus Chen's, "Herridge['s] arguments along [those] lines likely would not change the outcome here in any event."  (*Id*. at 22.)

Herridge's argument that there are "conflicting opinions from judges on this Court" regarding the proper scope of balancing under *Zerilli* relies exclusively on this Court's split vote denying rehearing en banc in the *Lee* case. (*See* Mot. at 17-18.) But Herridge tellingly fails to acknowledge that no "precedential weight" attaches to a denial of a rehearing en banc. *Luckey v. Miller*, 929 F.2d 618, 622 (11th Cir. 1991).[5] Rather, the denial of rehearing in *Lee* merely left undisturbed as precedent the panel's opinion in that case, which—as the District Court correctly held—"confirmed" *Zerilli's* also-precedential holding that the balancing test must be tailored to the factors of centrality and exhaustion identified in *Zerilli*. (MTQ Order at 9 [Dkt. 140].)

Finally, the Court carefully reviewed this Circuit's decisions regarding the scope of a journalist's privilege in a Privacy Act case and correctly determined that recognizing a separate common law privilege with an amorphous and broad balancing element would "circumvent" this Circuit's "well-established First Amendment privilege [jurisprudence] that both protects journalists' interests and channels judicial discretion in balancing the interest against evidentiary need." (*Id.* at 26 (quoting *Lee v. Dep't of Justice ("Lee II")*, 401 F. Supp. 2d 123, 137, 139,

---

[5] In a footnote, Herridge argues only that "the summary denial of rehearing en banc in *Lee* has no precedential effect and did not reject the arguments made in dissent." (Mot. at 19 n.6 (citing *Luckey*, 929 F.2d at 622).) But in so doing, Herridge misses the key point that no "precedential weight" attaches to a denial of a rehearing en banc. *Luckey*, 929 F.2d at 622.

141-42 (D.D.C. 2005)).)  And, contrary to Herridge's representation that whether a federal common law privilege exists in this Circuit is an "open and serious legal question," (Mot. at 19), the Court further noted that both the *Lee* and *Hatfill* courts addressed the issue in the specific context of the Privacy Act and determined that recognizing a privilege in that context would saddle district courts with a "daunting and well-nigh impossible task" and "risk undermining 'the fundamental purpose of the Privacy Act' of 'discourag[ing] the kind of [alleged] leaks that are at issue in this action.'"  (MTQ Order at 26 [Dkt. 140] (quoting *Lee II*, 401 F. Supp. 2d at 139, 141-42).)

At bottom, the District Court's decision holding that Chen made a sufficient showing to overcome Herridge's qualified First Amendment privilege claim, and rejecting an unrecognized common law privilege, was fully in accord with this Circuit's precedent as established by *Zerilli* and *Lee*.  Thus, even if the Court had jurisdiction to consider the merits issues in the context of the present appeal—which it does not—Herridge cannot demonstrate that she is likely to succeed on the merits of her appeal.  Although the jurisdictional defect is alone sufficient for the Court to deny a stay (and dismiss Herridge's appeal), the fact that her merits arguments are in clear conflict with established Circuit precedent also weighs heavily against granting her a stay.

**B.    Herridge Will Suffer No Irreparable Harm from Denial of a Stay, Whereas Chen has been Harmed and Will Suffer Further Prejudice from Unnecessary and Pointless Delay.**

Recognizing that she must show a likelihood of irreparable harm absent a stay to prevail, Herridge spills much ink attempting to establish that the Order would cause her irreparable harm by forcing her to disclose her confidential source(s). (Mot. at 2, 10-11.)  Herridge claims that such a forced disclosure would ruin her reputation as a reporter "permanent[ly] and beyond repair," and would "cripple" her career as an investigative journalist in national security matters.  (*Id.* at 10-11.)  But again, Herridge's posturing to this Court on that score runs counter to her ***repeated and emphatic*** representations to the District Court that she will refuse to answer any deposition questions regarding her confidential source(s), and that she will accept a contempt finding and seek an appeal.  (*See* Mot. for Certification at 2-3, 5, 13 [Dkt. 144] ("Ms. Herridge does not intend to reveal any confidential source(s) if her deposition is scheduled and would refuse to answer questions about her source(s) if that becomes necessary to seek an immediate appeal".)  Thus, Herridge's argument to this Court that the Order Denying the Motion to Quash will harm her by causing her to reveal her confidential source(s) is a red herring at best, and disingenuous at worst.

Herridge's argument, in the alternative, that having to go through the contempt process is itself irreparable harm, is equally unavailing.  Quite clearly,

25

requiring Herridge to follow through with the procedural process required by precedent in this Circuit (and others) to appeal the merits of the Order Denying the Motion to Quash is, by definition, not irreparable harm. *See, e.g.*, *In re Ryan*, 538 F.2d at 437; *Anderson*, 464 F.2d at 1390; *Kemp*, 947 F.2d at 1495. As noted above, this process serves a useful purpose as it is designed to (1) ensure that a nonparty aggrieved by enforcement of a subpoena will not burden the courts with an appeal unless he or she has a sufficient stake in the issue, (2) allow the nonparty an opportunity to reconsider whether to comply with the discovery order, and (3) to allow the litigant to then consider whether seeking a finding of contempt is warranted. *See In re Flat Glass Litig.*, 288 F.3d 83, 89-90 (3d Cir. 2002). Moreover, Herridge's claims of present irreparable harm are undercut by the reality that in the event that the District Court does ultimately hold Herridge in contempt and impose a sanction, Herridge will at that point have the opportunity to not only appeal the merits of the Order Denying the Motion to Quash, but ***also*** to appeal any sanction imposed—as well as to seek a stay of any such sanction, both from the District Court and this Court.

Finally, contrary to Herridge's dismissive claims that Chen will suffer no harm from a stay, Chen absolutely will be harmed by suffering further delay of her ability to obtain redress for violation of her rights while this procedurally improper appeal continues to full briefing. Indeed, in a similar Privacy Act case in this Circuit,

Judge Walton observed that "the lapse of time generally jeopardizes a party's ability to advance [her] claims." *Hatfill v. Mukasey*, 539 F. Supp. 2d 96, 104 (D.D.C. 2008). Here, as in *Hatfill*, Chen has been required to undertake years of painstaking discovery of the government and third parties before even seeking the leakers' identity from Herridge, and given the tendency of witness memories to fade over time, "further delay of a case that is already [nearly five] years old may very likely prejudice [Chen], with the potential result being the erosion of [her] ability to effectively establish [her] Privacy Act claims." *See id.* at 104. Herridge's arguments simply ignore that it is Chen, not Herridge, who has had her rights violated by a vindictive government official, and every day that individual is permitted to remain anonymous only increases Chen's harm and frustrates her ability to vindicate her rights.

### C. No Public Interest is Served by Continuing to Shield a Government Official Who Violated the Rights of an American Citizen.

In arguing that the public interest strongly favors a stay, Herridge focuses entirely on the generalized First Amendment interest in allowing a journalist to maintain confidentiality of sources, and claims that this interest is "especially acute" when a source provides "unauthorized leaks" relating to "national security matters." (Mot. at 21.) But this argument ignores the important context of this case involving the Privacy Act, which was passed by Congress in recognition that "the right to privacy is a personal and fundamental right protected by the Constitution of the

27

United States," and that citizens should have a right of redress where a government official engages in "willful or intentional action" to disseminate a private citizen's records held by the government.  *See* The Privacy Act of 1974, Pub. L. No. 93-579, §2(A), 88 Stat. 1896 (Congressional Findings & Statement of Purpose).  As the District Court noted in its Order Denying the Motion to Quash, "[t]he Privacy Act protects not just [Plaintiff] but all private citizens, whether blameworthy or blameless, from the risk that government officials might be tempted to abuse their access to sensitive information by leaking materials intended to embarrass particular individuals."  (MTQ Order at 24 [Dkt. 140].)  And, as this Court has recognized, "[T]he protections of the Privacy Act do not disappear when the illegally disclosed information is leaked to a journalist, no matter how newsworthy … the information is."  *Lee*, 413 F.3d at 60.

This case involves the unauthorized and illegal disclosure of Chen's protected records by a government official, most likely for the purpose of trying and convicting Chen in the court of public opinion after the federal government elected not to bring any charges against her whatsoever.  The public interest favors deterrence of, and redress for, such abuses, and Herridge's act of shielding her source is frustrating that public interest and allowing a wrongdoer to escape identification and consequence. While Herridge claims that having to reveal her source—which again, she will not actually have to do if she elects to stand in contempt and bring a proper appeal of

28

the District Court's order—will impose a substantial burden on journalists, in reality, the upshot of Herridge ultimately having to reveal her source will be a warning to government officials who violate the Privacy Act that they will not be able to use source confidentiality to shield their illegal acts. Such a warning shot would be in the public interest and would further the purpose of the Privacy Act to prevent against abusive conduct by government officials.

**III.    Herridge's Appeal Should be Dismissed.**

As set forth above, this Court lacks jurisdiction to consider Herridge's appeal pursuant to 28 U.S.C. § 1291. Herridge's Motion should be denied, and Chen requests summary dismissal of the appeal pursuant to D.C. Circuit Rule 8(b).

## <u>CONCLUSION</u>

The Court should deny Herridge's request for a stay, and it should dismiss Herridge's appeal for lack of jurisdiction.

Dated: September 18, 2023

Respectfully Submitted,

*/s/ Andrew C. Phillips*
Andrew C. Phillips (Bar No. 64792)
MEIER WATKINS PHILLIPS PUSCH LLP
1629 K Street NW, Suite 300
Washington, DC 20006
Email: andy.phillips@mwpp.com

*Counsel for Plaintiff Yanping Chen*

## **CERTIFICATE OF COMPLIANCE**

This opposition and motion by Plaintiff-Appellee complies with the type-volume limit of D.C. Circuit Rule 8(b) because it contains 7,178 words. This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1) and 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionately spaced typeface.

September 18, 2023                              */s/ Andrew C. Phillips*
                                               Andrew C. Phillips

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify in accordance with Federal Rule of Appellate Procedure 25(c) and Circuit Rule 25(c), that on September 18, 2023, the foregoing document was electronically filed with the Clerk of the Court using the Clerk's ECF system. I have transmitted a true and correct copy of the foregoing document to counsel for the Appellant Catherine Herridge and to the other parties to the underlying district court action, all of whom have consented to such service as follows:

*Counsel for Catherine Herridge:*

> Patrick F. Philbin
> pphilbin@egcfirm.com
>
> Kyle T. West
> kwest@egcfirm.com
>
> Chase Harrington
> charrington@egcfirm.com

*Counsel for Federal Bureau of Investigation, United States Department of Justice, United States Department of Defense, and United States Department of Homeland Security:*

> Carol Federighi
> carol.federighi@usdoj.gov
>
> Bradley A. Hinshelwood
> Bradley.A.Hinshelwood@usdoj.gov
>
> Michael Raab
> Michael.Raab@usdoj.gov                        */s/ Andrew C. Phillips*
>                                                                  Andrew C. Phillips